# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Stephen Wayne Carlson,<br><br>    Plaintiff,<br><br>v.<br><br>Minnesota Department of Employment and Economic Development; Commissioner Mark R. Phillips, in Official Capacity; and Minnesota Governor Mark Dayton, in Official Capacity;<br><br>    Defendants. | Civ. No. 12-644 (JNE/JJK)<br><br><br><br>**REPORT AND RECOMMENDATION** |

Stephen Wayne Carlson, PO Box 2361, St. Paul, MN 55102, *pro se*.

Gina D. Jensen, Esq., and Scott A. Grosskreutz, Esq., Minnesota Attorney General's Office, counsel for Defendants.

JEFFREY J. KEYES, United States Magistrate Judge

  This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. No. 12), and on Plaintiff's Motion for Temporary Restraining Order (Doc. No. 22). The United States District Court has referred these motions to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons that follow, this Court recommends that Defendants' motion be granted, that Plaintiff's motion be denied, and that this action be dismissed.

## BACKGROUND

In his Complaint, Plaintiff Stephen Wayne Carlson ("Carlson") asserts claims against the Minnesota Department of Employment and Economic Development ("DEED"), DEED's Commissioner, Mark R. Phillips, and Minnesota's Governor Mark Dayton (collectively "Defendants"). (Doc. No. 1, Attach. 1, Compl. 1.) Carlson seeks to recover the following: (1) unemployment benefits he claims Defendants unlawfully have denied him; (2) a retroactive injunction requiring the State of Minnesota (the "State") to turn over those unpaid benefits; (3) a prospective injunction requiring the State to follow federal and constitutional requirements in administering the federal Emergency Unemployment Compensation ("EUC") program under 26 U.S.C. § 3304; and (4) compensatory damages. (Compl. at 2–3.) Carlson alleges that DEED is the Minnesota agency responsible for administering unemployment benefits, and Commissioner Phillips "has general responsibility and powers for directing [DEED]." (*Id.* at 4.) He also asserts that Governor Dayton, as "chief executive officer[, is responsible] to ensure that the State of Minnesota complies with the federal Constitution and statutes in administering the federal [Emergency Unemployment Compensation] program." (*Id.*)

Further, Carlson asserts that since September 12, 2010, Defendants have deprived him of cash payments he is entitled to receive from the United States Government without due process of law. (Compl. 4–5.) Carlson claims DEED denied him EUC benefits without pre-deprivation notice and opportunity to be

heard or a post-deprivation hearing. (*Id.* at 5.) Because of this "unlawful administration of the program," Carlson alleges that DEED and the State of Minnesota should be ordered to disburse benefits payments that have previously been denied to him. (*Id.* at 5, 6.)

Carlson has previously litigated the issue of his entitlement to federal EUC benefits in state administrative proceedings and before the Minnesota Court of Appeals. First, in *Carlson v. Dep't of Emp't and Econ. Dev.*, No. A11-254, 2011 WL 6757431 (Minn. Ct. App. Dec. 27, 2011) [hereinafter "*Carlson I*"] (unpublished), Carlson "challenge[d] the unemployment-law judge's ("ULJ") determination that he was not entitled to receive extended federal unemployment benefits under the Federal Unemployment Compensation Extension Act of 2010, Pub.L. 111-205 (the Act)." *Carlson I*, 2011 WL 6757431, at *1. Carlson received unemployment benefits from the State of Minnesota and federal EUC benefits for the benefit year of August 2008 through August 2009, and again from August 2009 through August 2010. *Id.* He sought both state and federal unemployment benefits from September 12, 2010, through September 10, 2011, but DEED determined that he was not eligible to receive the federal EUC benefits for that period "until he exhausted his state account for the benefit year ending September 10, 2011." *Id.* Carlson challenged DEED's decision before the ULJ "arguing that under the provisions of the [EUC] Act, he was entitled to deferment of state-benefit-year payments and receipt of EUC benefits until the remainder of the EUC benefits for which he qualified was fully disbursed." *Id.* After holding a

3

hearing, the ULJ disagreed with Carlson. *Id.* Carlson then appealed the ULJ's decision, and the Minnesota Court of Appeals agreed with the ULJ that the Act did not apply to Carlson. *Carlson I*, 2011 WL 6757431, at *1–2. The court rejected Carlson's theory that the ULJ and DEED were liable to him for damages under 42 U.S.C. § 1983 for alleged violations of federal constitutional law. *Id.* at *2. Carlson petitioned the Minnesota Supreme Court for further review, but that court denied his petition. *Carlson v. Dep't of Emp't and Econ. Dev.*, No. A11-254 (Minn. Mar. 28, 2012), order available at http://macsnc.courts.state.mn.us.

Carlson next litigated issues relating to unemployment benefits in *Carlson v. Bureau of Census – FY2010 Decentennial Census (FIC 913/Dest 1)*, No. A11-988 (Minn. Ct. App. Mar. 13, 2012) [hereinafter "*Carlson II*"], order opinion available at http://macsnc.courts.state.mn.us. On March 14, 2012, the Minnesota Court of Appeals issued an Order Opinion explaining that Carlson established an unemployment compensation benefits account with the State of Minnesota on December 5, 2010. *Id.* ¶ 3. DEED determined that Carlson could receive weekly state unemployment benefits, but Carlson again argued that he should be allowed to continue collecting the federal EUC benefits. *Id.* The Minnesota Court of Appeals cited its earlier decision in *Carlson I* and noted that the same reasoning applied in Carlson's new appeal. *Id.* ¶¶ 5–6. The court concluded that Carlson was not eligible to collect further EUC benefit payments at the end of his second benefit year, or in December 2010. *Id.* Carlson again petitioned the Minnesota Supreme Court for review of this decision on April 16, 2012, and on

4

May 30, 2012, the Minnesota Supreme Court denied that petition for review. *Carlson II*, No. A11-988 (Minn. May 30, 2012), order available at http://macsnc.courts.state.mn.us.

Having failed to obtain the relief he sought through the state appellate process, Carlson brought this action as an adversary proceeding in his bankruptcy action. On March 12, 2012, in light of his jury demand and the relief he seeks, and because the Complaint raised "non-core claims," United States Bankruptcy Judge Dennis D. O'Brien transferred the adversary proceeding to the United States District Court for the District of Minnesota under Rule 5011-3(a)(1) of the Local Rues of the United States Bankruptcy Court for the District of Minnesota. (Doc. No. 1, Attach. 6, Order Transferring Adversary Proceeding.) After filing an Answer to the Complaint (Doc. No. 1, Attach. 5, Ans.), Defendants brought their Motion for Judgment on the Pleadings. (Doc. No. 12.) As grounds for their motion, Defendants argue that Carlson's claims are barred by the Eleventh Amendment to the United States Constitution, the *Younger* abstention doctrine, and by res judicata and collateral estoppel. (Doc. No. 14, Mem. of Law in Supp. of Defs.' Mot. for J. on the Pleadings ("Defs.' Mem."), *passim*.) In his response, Carlson asserts that Defendants' motion is an improper Rule 12(c) motion. (Doc. No. 19, Pl.'s Resp. to Defs.' Mot. and Mem. for J. on the Pleadings ("Pl.'s Resp.") 13–21.) He also asserts that "this Court must overturn [the state courts' refusal to apply the remedy provided by the federal EUC statutes]" (*id.* at 6); that he was denied due process by the administrative proceeding before the

5

ULJ (*id.* at 11–12); that neither the *Younger* abstention doctrine nor the *Rooker-Feldman* doctrine applies (*id.* at 26–29); that the Eleventh Amendment does not bar his claims (*id.* at 30); and that the ULJ's decision denying his applications for federal EUC benefits should not be given preclusive effect (*id.* at 30–32).

## DISCUSSION

### I. Defendants' Motion For Judgment on the Pleadings

#### A. Standard of Review

A district court applies the same standard to motions under Federal Rule of Civil Procedure 12(c) and 12(b)(6). *Ashley Cnty., Ark. V. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). To survive a motion for judgment on the pleadings, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. *See Twombly*, 550 U.S. at 555. "[L]abels and conclusions" are not sufficient, and are not entitled to an assumption of truth. *Iqbal*, 129 S.Ct. at 1949 (quotations and citation omitted).

6

The court does not consider matters outside the pleadings under Rule 12(c). *See* Fed. R. Civ. P. 12(d). The court may, however, consider matters of public record and materials that are "necessarily embraced by the pleadings." *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted).

### B. Defendants' Motion is Proper

Carlson first argues that Defendants' motion should be denied because it improperly raises issues that should have been brought as a pre-answer motion under Rule 12(b). (*See* Pl.'s Resp. at 13–17.) Defendants' motion raises challenges to this Court's subject-matter jurisdiction under the Eleventh Amendment, the *Younger* abstention doctrine, and the *Rooker-Feldman* doctrine. It also asserts that some of Carlson's claims are barred by res judicata and collateral estoppel. These challenges are properly raised in a motion under Rule 12(c). *See* Fed. R. Civ. P. 12(h) (noting that a defense of lack of subject matter jurisdiction may be raised at any time); *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010) (noting that res judicata is an affirmative defense properly raised in a motion for judgment on the pleadings);[1] *Novo Nordisk, Inc. v. Paddock Labs., Inc.*, 797 F. Supp. 2d 926, 930 (D. Minn. 2011) ("The issue of whether collateral estoppel applies is properly raised on a motion for judgment on the pleadings."); *Saraswati v. Cnty. of San Diego*, No. 07-cv- 1415 WQH (POR), 2010 WL

---

[1] Defendants preserved these affirmative defenses in their Answer. (Doc. No. 1, Attach. 5, Ans., Separate Defenses ¶ 8.)

7

4569888, at *2 (S.D. Cal. Nov. 4, 2010) ("*Younger* abstention is properly raised in a motion for judgment on the pleadings pursuant to Rule 12(c)."); *Mac Pherson v. State St. Bank and Tr. Co.*, 452 F. Supp. 2d 133, 136–40 (E.D.N.Y. 2006) (considering a challenge to subject-matter jurisdiction based on the *Rooker-Feldman* doctrine raised in a motion for judgment on the pleadings). Accordingly, this Court concludes that Defendants have properly raised their challenges to Carlson's Complaint under Rule 12(c).

## II. *Younger* Abstention Doctrine

Defendants contend that dismissal is warranted because this Court lacks subject-matter jurisdiction under the *Younger* abstention doctrine. (Defs.' Mem. 8–11.) However, "[i]n an abstention analysis, the issue is not whether a court has jurisdiction, but instead whether it is appropriate for a court to decline jurisdiction." *Uland v. City of Winstead*, 570 F. Supp. 2d 1114, 1118 (D. Minn. 2008). The *Younger* abstention doctrine originally directed federal district courts to decline jurisdiction in cases seeking to enjoin ongoing state criminal proceedings, *Younger v. Harris*, 401 U.S. 37 (1971), but expanded it to involve ongoing state civil proceedings as well. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982). The *Younger* abstention doctrine instructs federal courts to refuse jurisdiction in an action seeking injunctive relief where "(1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding." *Plouffe v. Ligon*,

8

606 F.3d 890, 892 (8th Cir. 2010). When these factors are met "so long as there is no showing of bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate, the federal court should abstain." *Middlesex*, 457 U.S. at 435.

When Carlson filed this action on February 7, 2012, as an adversary proceeding,[2] neither *Carlson I* nor *Carlson II* was finally resolved.[3] (*See* Doc. No. 15, Aff. of Scott A. Grosskreutz ("Grosskreutz Aff.") ¶¶ 5–6, Exs. 4–5.) Carlson does not dispute that he initiated this action in his pending bankruptcy matter prior to exhausting his state appellate remedies. *Younger* abstention applies when the time to appeal a state court decision has not expired. *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1143–44 (8th Cir. 1990) (noting that state "appellate processes must be exhausted before a party . . . can seek relief in federal court"). Thus, the first factor in the *Younger* analysis weighs in favor of declining jurisdiction.

The second factor asks whether the ongoing state proceeding implicates important state interests. This Court agrees with Defendants' argument that granting the injunctive relief Carlson seeks would implicate the important state

---

[2] *In re Carlson*, Bankr. No. 11-34420, Doc. No. 59 (Bankr. D. Minn. Feb. 7, 2012).

[3] Because state appellate remedies remained available to Carlson at the time he filed this action as an adversary proceeding in his bankruptcy case—i.e., at the time of filing he could have appealed the resolution of his state court actions to the Minnesota Supreme Court—the *Rooker-Feldman* doctrine does not apply.

9

interest in "in protecting the authority of the [state] judicial system, so that its orders and judgments are not rendered nugatory." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 n.12 (1987) (internal quotations omitted). Essentially, to order DEED, or any other Defendant in this matter, to retroactively pay to Carlson the federal EUC benefits he seeks would allow litigants to use this Court as an intermediary appellate court that could overturn the decisions of the Minnesota Court of Appeals and Minnesota Supreme Court. With the exception of habeas corpus review under 28 U.S.C. § 2254, the United States Supreme Court is the only federal court that may review a state court's judicial decision. *See* 28 U.S.C. § 1257(a). Now that both *Carlson I* and *Carlson II* have reached final judgment, Carlson's only avenue to challenge the outcomes of those proceedings is before the United States Supreme Court.

With respect to the third factor in the *Younger* analysis, the Minnesota courts provided an adequate opportunity for Carlson to raise any relevant federal questions in the state proceedings. When he litigated the same claims he brings in this case before the Minnesota Court of Appeals in *Carlson I* and *Carlson II*, Carlson had an opportunity to raise his arguments concerning the proper application of the EUC Act and his belief that he was denied due process in the proceeding before the ULJ. In fact, he did raise these arguments. *See Carlson I*, 2011 WL 6757431, at *2 (noting that Carlson insisted that the Federal Unemployment Compensation Extension Act of 2010 entitled him to benefits and that the ULJ and DEED violated his statutory and constitutional rights);

10

*Carlson II*, No. A11-988, Order Opinion ¶ 5 (noting that Carlson again argued on appeal that the Federal Unemployment Compensation Extension Act of 2010 applied to him). In this case, the essence of Carlson's claims is his dissatisfaction with the state administrative and judicial decisions that rejected his arguments. To the extent Carlson believed that the ULJ or the Minnesota courts simply got it wrong, his remedy was to challenge those decisions by filing an appeal to the United States Supreme Court, not by pursuing a civil action in this Court. Further, Carlson has not shown that any exception applies to the *Younger* abstention doctrine.

Thus, in accordance with *Younger*, this Court recommends that the District Court decline jurisdiction in this matter. The entry of an injunction resulting in the payment of federal EUC benefits—which Carlson unsuccessfully argued he was entitled to receive in state court—would now overturn state court judgments in cases that were pending at the time he filed this action. His claims for injunctive relief should, therefore, be dismissed.

However, this Court's analysis of Carlson's claims does not end there. Outright dismissal under *Younger* abstention may not be the appropriate remedy where a plaintiff seeks both injunctive relief and damages under 42 U.S.C. § 1983, as Carlson does here. "The *Younger* abstention doctrine only governs suits for equitable relief—cases where a federal decree may interfere with the authority of state courts—not actions at law for damages." *Uland*, 570 F. Supp. 2d at 1118. "[W]here a plaintiff seeks both legal and equitable remedies, a

11

federal court cannot decline jurisdiction over the legal claims [and] the appropriate remedy is to stay the federal proceeding until the state proceeding is resolved." *Id.* "[D]ismissal on abstention principles of a section 1983 damages case [may be necessary where] the award of damages would have first required a declaration that a state [statutory scheme is] unconstitutional." *Night Clubs, Inc. v. City of Fort Smith, Ark.*, 163 F.3d 475, 481–82 (8th Cir. 1998). Unlike the situation involved in *Night Clubs, Inc.*, Carlson does not seek any declaration that a state statute is unconstitutional in this matter. In such a scenario, courts may enter a stay of the plaintiff's claims against defendants from whom the plaintiff seeks damages. *See, e.g.*, *Night Clubs, Inc.*, 163 F.3d at 482 (noting that dismissal was not appropriate where the plaintiff was seeking monetary damages in addition to injunctive relief and remanding to the district court for a stay pending the final resolution of the state litigation). Thus, *Younger* abstention may not be an appropriate remedy with respect to Carlson's claims for damages.

Thus, this Court does not recommend dismissal of Carlson's damages claims under the *Younger* abstention doctrine, but as explained below, Carlson's claims for damages should nevertheless be dismissed under the Eleventh Amendment.

## III. Eleventh Amendment Immunity

Defendants argue that Carlson's damages claims should be dismissed because the State of Minnesota, its agencies, and its officials are immune from suit under the Eleventh Amendment. (Defs.' Mem. 4–8.) The Eleventh

Amendment prevents suits against state governments brought in federal court, except when Congress has abrogated that immunity for a particular cause of action, *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999), or when a state has clearly and expressly waived its immunity, *Edelman v. Jordan*, 415 U.S. 651, 673 (1971). This sovereign immunity also bars suits against state instrumentalities and entities, *Becker*, 191 F.3d at 908, and against state officials sued in their official capacities. *Kimel v. Fl. Bd. of Regents*, 528 U.S. 62, 72–74 (2000); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (noting that a "suit against a state official in his or her official capacity" is "no different from a suit against the State itself").

Accordingly, here, as an agency of the State of Minnesota, DEED is entitled to sovereign immunity from Carlson's First and Fourteenth Amendment claims. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) (noting that sovereign immunity extends to state agencies). And Carlson's claims against Governor Dayton and DEED Commissioner Mark Phillips in their official capacities, which are no different from a claim against the State itself, *Will*, 491 U.S. at 71, should likewise be dismissed.

Carlson argues that Congress abrogated Defendants' sovereign immunity under 11 U.S.C. § 106. He argues that this section is applicable here because the State of Minnesota has filed a proof of claim in his bankruptcy proceeding relating to outstanding tax debts. (Pl.'s Resp. 30.) Section 106 can abrogate a state's sovereign immunity in two situations: (1) when the state files a proof of

13

claim in a bankruptcy proceeding and the debtor has a compulsory counterclaim, i.e., a claim that arises out of the same transaction or occurrence giving rise to the proof of claim, 11 U.S.C. § 106(a); and (2) permissive counterclaims to a governmental proof of claim with a limitation for a setoff, 11 U.S.C. § 106(b). Assuming for the sake of argument that this statute applies to cases transferred from the bankruptcy court, Carlson has not shown that Defendants have filed a proof of claim or that he is asserting the equivalent of a compulsory counterclaim against Defendants here. Thus, Carlson has not shown that Congress abrogated Defendants' sovereign immunity.

## IV.     Res Judicata

This Court also concludes that Carlson's claims are barred by the doctrine of res judicata. "The law of the forum that rendered the first judgment controls the res judicata analysis." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). Minnesota's courts rendered the first decisions in this action, so this Court applies Minnesota's law of res judicata. Under Minnesota law, res judicata bars a later claim when: (1) the earlier claim involved the same set of facts; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004).

Carlson's claims in this suit involve the same facts that he litigated in *Carlson I* and in *Carlson II*. His earlier claims involved the same parties as those

14

sued here; in *Carlson I* and *Carlson II*, his claims concerned DEED's actions, and because his claims against Defendants Phillips and Dayton are official-capacity claims that are really claims against the State of Minnesota, there are no new parties involved now. Both *Carlson I* and *Carlson II* involved a judgment on the merits. And Carlson had an opportunity to fully and fairly litigate the issues that he has raised in this litigation. Accordingly, this Court concludes that his claims are barred by the doctrine of res judicata.

## V.     Plaintiff's Motion for Temporary Restraining Order

Because this Court has concludes that Defendants' Motion for Judgment on the Pleadings should be granted, and Carlson's claims should be dismissed, it need not address Plaintiff's Motion for a Temporary Restraining Order at length. A temporary restraining order is an extraordinary remedy, and the movant bears the burden of establishing its propriety. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). A court considers four factors in determining whether a TRO should issue: (1) the threat of irreparable harm to the movant in the absence of relief; (2) the balance between that harm and the harm that the relief may cause the non-moving party; (3) the likelihood of the movant's ultimate success on the merits; and (4) the public interest. *See Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc). Because Plaintiff's claims should be dismissed for lack of jurisdiction under the Eleventh Amendment and on grounds of res judicata, Carlson cannot establish that he is entitled to a TRO.

## VI.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion for Judgment on the Pleadings (Doc. No. 12), be **GRANTED**;

2. Plaintiff's Motion for Temporary Restraining Order (Doc. No. 22), be **DENIED**; and

3. This case be **DISMISSED**.

Date: October 17, 2012
 *s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **October 31, 2012,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.